Michael T. Risher (CA SBN 191627)
mrisher@aclunc.org
Linda Lye (CA SBN 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm St., 2nd Floor
San Francisco, CA 94111
Telephone:   415-621-2493
Facsimile:   415-255-8437

Richard M. Pearl (CA SBN 46351)
rpearl@interx.net
LAW OFFICES OF RICHARD M. PEARL
1816 Fifth Street
Berkeley, CA 94710
Telephone:  510-649-0810
Facsimile:  510-548-5074

Attorneys for Plaintiffs
AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA and
SAN FRANCISCO BAY GUARDIAN

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; SAN FRANCISCO BAY GUARDIAN,<br><br>Plaintiffs,<br><br>v.<br><br>DRUG ENFORCEMENT ADMINISTRATION,<br><br>Defendant. | CASE NO.: C 11-01997 RS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND LITIGATION COSTS**<br><br>**Hearing Date:**  None (Submitted per Court Order) |

**CASE NO. C 11-01997 RS**
**Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs**

# TABLE OF CONTENTS

I.  SUMMARY OF REPLY ........................................................................................ 1

II. ARGUMENT ....................................................................................................... 1

    A.  PLAINTIFFS ARE ELIGIBLE AND ENTITLED TO FEES ........................... 1

        1.  Plaintiffs Are Eligible for a Fee Award Both Because They Obtained Relief Through a Judicial Order and Because Their Lawsuit Catalyzed DEA's Response ........................................................... 1

            a.  The action was reasonably necessary because Plaintiffs needed documents in advance of an impending execution............................... 2

            b.  Plaintiffs' lawsuit catalyzed DEA's document productions.................. 4

            c.  The number of pages produced after summary judgment does not alter the conclusion that Plaintiffs substantially prevailed.............. 8

        2.  Plaintiffs Are Entitled to a Fee Award............................................................ 9

    B.  PLAINTIFFS' ATTORNEYS' FEES ARE REASONABLE............................ 10

        1.  Plaintiffs' Hourly Rates Are Reasonable..................................................... 10

        2.  Time Spent on the Preliminary Injunction Motion Is Compensable .......... 11

        3.  Reduction for "Limited Success" Is Neither Required Nor Appropriate ................................................................................................ 13

        4.  The DEA's Other Objections Lack Merit.................................................... 14

        5.  Plaintiffs' Work on this Motion Is Fully Compensable.............................. 14

        6.  Plaintiffs' Costs Are Modest and Compensable ........................................ 15

III. CONCLUSION  ............................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Director,* 91 F.3d 1322 (9th Cir. 1996) .......................................................... 14

*Aronson v. United States Dept. of Housing & Urb. Dev.,* 866 F.2d 1 (1st Cir. 1989) ........................................................................................................................... 9

*Assembly of the State of Calif. v. Dep't of Commerce*, 1993 WL 188328 (E.D.Cal. May 28, 1993) .................................................................................................. 12

*Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012) ....................................................... 1, 10, 12, 14

*Bernardi v. Yeutter,* 951 F.2d 971 (9th Cir. 1991) ............................................................. 15

*California First Amendment Coal. v. Woodford,* 299 F.3d 868 (9th Cir. 2002) ............... 13

*Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486 (9th Cir. 1983) ................. 2, 4, 6

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 825 F.Supp.2d 226 (D.D.C. 2011) ....................................................................................... 14

*Conservation Law Found. v. Dep't of Air Force,* 1986 WL 74352 (D. Mass. Oct. 6, 1986) ................................................................................................................. 2, 9

*Craigslist, Inc. v. Naturemarket*, 694 F.Supp.2d 1039 (N.D. Cal. 2010) ........................... 11

*Daley v. A & S Collection Associates,* 2010 WL 5137834 (D. Or. Dec. 10, 2010) .......... 11

*Deininger & Wingfield, P.A. v. IRS*, 2009 WL 2241569 (E.D. Ark. July 24, 2009) ............................................................................................................................. 9

*Electronic Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec*., 811 F.Supp.2d 216 (D.D.C. 2011) ........................................................................................................ 6, 7

*Exner v. Federal Bureau of Investigation,* 443 F.Supp. 1349 (S.D. Cal. 1978) ....... 2, 3, 12

*Exner v. Federal Bureau of Investigation*, 612 F.2d 1202 (9th Cir. 1980) .................. 2, 10

*Fesbach v. SEC*, 5 F.Supp.2d 788 (N.D. Cal. 1998) ............................................................ 8

*Ginter v. IRS,* 648 F.2d 469 (8th Cir. 1981) .................................................................... 3, 4

*Gracie v. Gracie,* 217 F.3d 1060 (9th Cir. 2000) .............................................................. 14

*Hersh & Hersh v. U.S. Dept. of Health & Human Servs.*, 2008 WL 2725497
    (N.D. Cal. July 10, 2008) ................................................................................................ 13

*Katz v. Dep't of Justice*, 498 F.Supp. 177 (S.D.N.Y. 1979) ................................................. 8

*Keith v. Volpe,* 833 F.2d 850 (9th Cir. 1987) ..................................................................... 14

*Klamath Water Users Protective Assn. v. U.S. Dept. of the Interior,* 18 Fed.
    Appx. 473 (9th Cir. 2001) ............................................................................................. 10

*Lovell v. Dep't of Justice,* 589 F.Supp. 150 (D.D.C. 1984) ................................................. 7

*Maryland Dept. of Human Res. v. Sullivan*, 738 F.Supp. 555 (D.D.C. 1990) .................... 7

*Morales v. City of San Rafael,* 96 F.3d 359 (9th Cir. 1996) .............................................. 13

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ............................. 6

*Prison Legal News v. Schwarzenegger,* 608 F.3d 446 (9th Cir. 2010) .................. 10, 11, 14

*Theme Promotions, Inc. v. News America Marketing FSI, Inc.,* 731 F.Supp.2d
    937 (N.D. Cal. 2010) ..................................................................................................... 11

*Ulin v. ALAEA, Inc.,* 2011 WL 4974282 (N.D. Cal. Oct. 9, 2011) .................................... 11

*Union of Concerned Scientists v. U.S. Nuclear Regulatory Comm'n,* 824 F.2d
    1219 (D.C. Cir. 1987) ..................................................................................................... 8

**STATUTES**

5 U.S.C. §552 ................................................................................................................ 1, 8, 15

Ninth Circuit Local Rule 36-3(c) ........................................................................................ 10

**OTHER AUTHORITIES**

Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee
    Litigation,* p. 30 (1994) ................................................................................................. 13

## I. SUMMARY OF REPLY

Plaintiffs' eligibility and entitlement to fees is beyond any reasonable dispute. In response to Plaintiffs' lawsuit and preliminary injunction motion, DEA produced more than a hundred pages of documents showing that states, including Arizona, had illegally imported a Schedule III controlled substance in their haste to execute inmates, and that DEA had turned a blind eye to this misconduct. DEA has *admitted* that its actions were affected by the lawsuit. *See* Myrick Decls. (Doc. 20-2), Exh. E & (Doc. 25-2) at ¶5. Then, this Court's summary judgment order required DEA to both conduct further searches and to produce more documents, which further established the flaws in DEA's oversight. Because Plaintiffs sought only to benefit the public by informing the national debate over the death penalty and how it is carried out, Plaintiffs' are entitled to fees under FOIA.

Further, DEA's objections to the amount of fees requested are unfounded. No relevant evidence is presented to rebut Plaintiffs' attorneys' hourly rates; the *Laffey* matrix urged by DEA has been expressly rejected by the Ninth Circuit. The preliminary injunction work was both necessary and useful, as DEA had refused to commit to a timely, full production; the Ninth Circuit's recent decision in *Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012) is directly on point, and DEA does not even try to distinguish it. A reduction for "limited success" is entirely inappropriate: such reductions are "rare" and here, the importance and relevance of the documents produced easily justifies the modest fees that Plaintiffs request. The other objections DEA raises are likewise meritless.

## II. ARGUMENT
### A. PLAINTIFFS ARE ELIGIBLE AND ENTITLED TO FEES
#### 1. Plaintiffs Are Eligible for a Fee Award Both Because They Obtained Relief Through a Judicial Order and Because Their Lawsuit Catalyzed DEA's Response

Under FOIA, a litigant has "substantially prevailed" and is thus eligible for fees, if it "has obtained relief through *either* … a judicial order… *or* a voluntary or unilateral change…" 5 U.S.C. §552(a)(4)(E)(ii) (emphasis added). Plaintiffs are eligible under *both* clauses: DEA produced no documents prior to this lawsuit, but in response to it, produced over a hundred pages at the preliminary injunction stage in May 2011; and pursuant to the Court's summary judgment order produced nearly a hundred more in November and

December 2011. DEA argues that Plaintiffs have not made the requisite showing as to the May 2011 production, but this argument is legally insufficient and factually incorrect.

First, separate from the May 2011 production, Plaintiffs "obtained relief through … a judicial order" and thus "substantially prevailed" when the Court ordered DEA on summary judgment to conduct searches and produce withheld information. *See* Doc. 48.

Second, Plaintiffs also substantially prevailed when DEA produced documents in May 2011 in response to Plaintiffs' filing. Under FOIA, plaintiffs "substantially prevail" when "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information; and (2) the filing of the action had a *substantial causative* effect on the delivery of the information." *Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983) (emphasis in original). Plaintiffs here easily satisfy this test.

### a. The action was reasonably necessary because Plaintiffs needed documents in advance of an impending execution

The filing of this *action* could reasonably have been regarded as necessary because Plaintiffs sought documents that would shed light on whether Arizona was about to execute someone with an illegal foreign drug, *before* the execution.

A lawsuit is reasonably regarded as necessary where, as here, plaintiffs have a concrete need to obtain the requested documents promptly and file suit to obtain them. In *Exner v. Federal Bureau of Investigation,* 443 F.Supp. 1349, 1353 (S.D. Cal. 1978), *aff'd*, 612 F.2d 1202 (9th Cir. 1980), the plaintiff became aware that the FBI had investigated her and that some potentially inaccurate information in her FBI file, about alleged mafia relationships, had been publicly leaked and endangered her. *Id.* at 1353. The court found her action reasonably necessary because she had concrete reasons to obtain her FBI files "as soon as possible." *Id.* Similarly, in *Conservation Law Found. v. Dep't of Air Force,* 1986 WL 74352 (D. Mass. Oct. 6, 1986), the plaintiff sought planning and design documents relevant to an agency's compliance with environmental laws on a particular project; the lawsuit was reasonably necessary because the agency had not met statutory deadlines and was imminently scheduled to begin construction on the project. *Id.* at *1.

Here, Arizona was about to use a potentially illegal foreign drug in an execution. Plaintiffs sought records that would shed light on whether the drug was illegal, whether

2
**CASE NO. C 11-01997 RS**
**Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs**

Arizona had violated the drug laws in acquiring it, and whether DEA had turned a blind eye to Arizona's misconduct. Before Plaintiffs filed suit, DEA failed to provide any documents, in violation of statutory timelines, or any status update on its search, other than the uninformative statement that it would make an "initial determination" at an unspecified "later date." *See* Minsker Decl. (Doc. 59) & Exh. 3. Given the execution and DEA's failure to provide documents or updates, Plaintiffs had "a compelling need to bring this lawsuit" *before* the execution. *Exner,* 443 F.Supp. at 1353.

*Ginter v. IRS,* 648 F.2d 469 (8th Cir. 1981), is distinguishable. There, the agency helped the requester to formulate a coherent request, conducted a search but found nothing, updated the requester, initiated a special search, and then again updated the requester. *Id.* at 471-72. The court found the suit "premature" because "the delay in producing the information was due in part to appellant's broad and vague requests, and the government's inability to find the documents." *Id.* at 473.

Here, by contrast, there is no contention that Plaintiffs' FOIA request was broad or vague. Delay was caused not by the agency's inability to find documents, but by its failure to look: The agency did not even initiate a search of its field divisions until *after* Plaintiffs filed suit. *See* Complaint (Doc. 1) (lawsuit filed April 22, 2011); Myrick Decl. (Doc. 20-1) at ¶6 (search at Headquarters and in some field divisions on April 27, 2011); *id.* at ¶5 (February 1, 2011 search at Headquarters only). And DEA, unlike the agency in *Ginter,* did little to update Plaintiffs on its search efforts: Although it had apparently initiated a search of its Headquarters on February 8, 2012, before the Complaint was filed, *see* DEA Opp. (Doc. 65) at 7:5-10,[1] this hardly affected whether Plaintiffs could reasonably have regarded a lawsuit as necessary because DEA *never relayed to Plaintiffs that it had initiated a search*. Its sole pre-suit status update was a March 9, 2011 letter acknowledging "delay" and stating that Plaintiffs would "be notified of our initial determination by correspondence at a later date…" Myrick Decl. (Doc. 20-2), Exh. D. Nowhere did it indicate that a search had been initiated, whether any documents had been located, or *when* the agency intended to make its initial determination. *See id.* Given the

---

[1] Citations are to pleading pages found in footers, not to ECF pages located in headers.

3
CASE NO. C 11-01997 RS
Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs

impending Arizona execution and the agency's failure to respond within statutory timelines or to provide Plaintiffs with any meaningful status updates, Plaintiffs' lawsuit was hardly "premature." *Ginter,* 648 F.2d at 473.

DEA also complains, however, that the *preliminary injunction motion* was unnecessary. But the "substantially prevailed" inquiry looks to whether "the filing <u>of the action</u> could reasonably have been regarded as *necessary* to obtain the information." *Church of Scientology*, 700 F.2d at 489 (underline added). This inquiry does not entail scrutiny of each act undertaken in furtherance of a reasonably necessary lawsuit.

In any event, the record underscores why Plaintiffs reasonably regarded the preliminary injunction as necessary. DEA's repeated assertion that it had agreed to Plaintiffs' requested production date (DEA Opp. (Doc. 65) at 2:26-27, 7:14-15, 8:8-9) is misleading. After Plaintiffs filed suit but before they filed the motion, Plaintiffs spent several days attempting to negotiate a production schedule with DEA. *See* Lye Decl. (Doc. 60) at ¶¶7-12. But DEA would only commit to producing *some* documents by May 16, 2011. *See id.* at ¶10. It refused to commit to *complete* the processing of the request by that date because, as to certain documents, it needed to consult with other agencies. *See id.* at ¶11. While DEA eventually agreed to complete production by May 16, 2011, *see* Myrick Decl. (Doc. 20-1) ¶6, it did so for the first time only *after* Plaintiffs filed the motion.[2] Given the high stakes – execution of an inmate with a potentially illegally drug – Plaintiffs reasonably regarded the preliminary injunction motion as necessary to ensure a complete production in advance of the execution.

**b. Plaintiffs' lawsuit catalyzed DEA's document productions**

The record also shows that Plaintiffs' litigation had a substantial causative effect on DEA's production of documents in May 2011, manifested in numerous ways:

*Key search.* On April 27, 2011, five days *after* the Complaint was filed, DEA initiated a key search of Headquarters and various field divisions. *See* Myrick Decl. (Doc.

---

[2] DEA states that "[t]he filing of the preliminary injunction was particularly unnecessary" because it "had already agreed to submit documents by May 16, 2011." DEA Opp. (Doc. 65) at 7:14-15 (citing Myrick Decl. (Doc. 20-1) ¶6). But the alleged pre-motion "agreement" to complete the production by May 16, 2011 consists of a statement in a declaration that DEA filed in opposition to – *i.e.*, *after* the filing of – the preliminary injunction motion. *See* Myrick Decl. (Doc. 20-1) ¶6. Prior to that time, DEA only agreed to a *partial* production by May 16, 2011. *See* Lye Decl. (Doc. 60) at ¶10.

4
**CASE NO. C 11-01997 RS**
**Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs**

20-1) at ¶6.  This was the *first* search of its field divisions.  *See id.* (Doc. 20-1) at ¶5 (pre-complaint search covered only Headquarters).  DEA *admits* that the lawsuit caused this search: "*In response to the suit*, the DEA conducted a standard litigation review of the FOIA administrative file, *which prompted* a supplemental search for responsive records." Myrick Decl. (Doc. 25-2) at ¶5 (emphasis added).

*Agreement to produce by May 16, 2011.*  After Plaintiffs filed suit but before the preliminary injunction motion, DEA agreed only to a *partial* production by May 16, 2011 (before the execution).  Only *after* Plaintiffs filed the motion did DEA agree to complete production by that date.  *See* Lye Decl. (Doc. 60) ¶¶10-11; Myrick Decl. (Doc. 20-1) at ¶6.

*Consultation requests.*  Before the motion was filed, DEA claimed an obstacle to completing the production by May 16, 2011 was its need to consult with other agencies on some documents.  *See* Lye Decl. (Doc. 60) at ¶10-11.  But DEA failed to take any action to overcome this obstacle until *after* Plaintiffs filed the preliminary injunction motion, and it was Plaintiffs' motion that finally instilled in DEA a sense of urgency:  Although DEA represented before Plaintiffs filed the motion that consultation requests had been sent as of April 27, 2011, DEA did not send them until May 2, 2011, four days *after* Plaintiffs filed the motion.  *See id.* at ¶12; Myrick Decl. (Doc. 20-2), Exh. E.

Further, the consultation requests, when eventually sent, identified Plaintiffs' motion as the reason DEA requested a prompt response:  "This matter is urgent in terms of time sensitivity *as the ACLU has sought a preliminary injunction for records against the DEA.*  As such, we are asking that your response be provided to this office no later than May 06, 2011."  Myrick Decl. (Doc. 20-2), Exh. E (emphasis added).  Thus, the motion caused DEA to request consultation and to do so with the required urgency.

*Production of DEA Form 236s.*  Plaintiffs' efforts also caused DEA to produce the DEA Form 236 import declarations before the Arizona execution.  *See* Pltfs' Mot. (Doc. 58) at 6-8.  These forms were essential because they would shed light on whether states that had imported sodium thiopental had done so legally.  *See* 21 CFR §§1312.11(b), 1312.18(b).  Plaintiffs raised the absence of these forms from DEA's document productions in Plaintiffs' reply brief in support of the motion, in the Joint Status Report

5

following the hearing on the motion, and in a subsequent letter to DEA on May 20, 2011. *See* Doc. 21 at 9-12; Doc. 25 at 4-5; Minsker Decl. (Doc. 59) at ¶36 & Exh. 7. Thus, even though the court denied the preliminary injunction motion on May 23, 2011, the same day, *DEA produced four Form 236s. See id.* at ¶38 & Exh. 8. The lawsuit and the motion were clearly the catalyst for this production.

DEA argues that the Form 236s "were treated as a completely new FOIA request and were not a part of this litigation." DEA Opp. (Doc. 65) at 16:12-13. It is inconceivable that DEA would have produced the Form 236s on May 23, 2011 absent this litigation. If, as DEA claims, the Form 236s were produced in response to Plaintiffs' May 20, 2011 letter, which DEA unilaterally construed as a new FOIA request, *see* Minsker Decl. (Doc. 59) at Exh. 8, then DEA responded to this "new" request in *three days.* Given the supposed backlog that delayed Plaintiffs' original request, *see* Myrick Decl. (Doc. 20-2), Exh. D, the only plausible explanation for the quick turnaround is that Plaintiffs' *litigation* caused DEA to produce the records outside the ordinary, backlogged channels.[3]

Despite its own admissions, DEA contests causation, offering three unpersuasive arguments. First, DEA's claims of administrative backlog do not carry the day. Its assertion that backlog caused the delay is undermined by its simultaneous claim that it "expended significant effort to fulfill this request well before this action was initiated." *Id.* at 13 of 23. How was DEA able to expend significant effort if backlog prevented it from processing this case? Moreover, DEA has never introduced any *evidence* of backlog. Like the agency in *Electronic Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.*, 811 F.Supp.2d 216 (D.D.C. 2011) ("*EPIC*"), DEA makes only "generic statements" of

---

[3] Also without merit is DEA's contention that the Form 236s did not relate to Plaintiffs' original January 4, 2011 FOIA request. Request 9 sought "[r]ecords … regarding any actual importation of sodium thiopental by state officials,…*including but not limited to DEA form 236.*" Minsker Decl. (Doc. 59), Exh. 1 (emphasis added). DEA had a "duty to construe [Plaintiffs'] FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). Instead, it unreasonably construed the request narrowly only to seek Form 236s filed directly by private entities on behalf of state officials. *See* Doc. 25 at 4. DEA's construction became even more untenable after Plaintiffs repeatedly clarified that they sought all Form 236s filed by or on behalf of state officials. *See* Doc. 25 at 4-5 (May 18, 2011 Joint Report); Minsker Decl. (Doc. 59), Exh. 7 (May 20, 2011 letter); *Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ("When… an agency becomes reasonably clear as to the materials desired, FOIA's text and legislative history make plain the agency's obligation to bring them forth.").

6
**CASE NO. C 11-01997 RS**
**Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs**

administrative backlog, but "without any evidence demonstrating that a backlog existed or that the agency performed its due diligence in processing the plaintiff's FOIA requests." *Id.* at 233. DEA has provided no information about what happened in the three months between its initial February 1, 2011 search and its first May 4, 2011 production, nor has it offered any explanation of how its unspecified conduct during this period reflects due diligence. *Compare Lovell v. Dep't of Justice,* 589 F.Supp. 150 (D.D.C. 1984) (agency explained how backlog addressed and offered quick replies to inquiries about delay). "Mere intentions to respond after three months of silence do not evidence due diligence. Arguing that the FOIA request was handled in the normal course of business suggests defendants are in the habit of delaying response to all FOIA requests." *Maryland Dept. of Human Res. v. Sullivan*, 738 F.Supp. 555, 562 (D.D.C. 1990) (finding causal nexus).

Moreover, DEA has *admitted* that its actions were affected by the lawsuit. *See* Myrick Decl. (Doc. 25-2) at ¶5 ("*In response to the suit*, the DEA conducted a standard litigation review of the FOIA administrative file, *which prompted* a supplemental search for responsive records.") (emphasis added); *id.* (Doc. 20-2), Exh. E (DEA consultation requests sought prompt response: "This matter is urgent in terms of time sensitivity as the ACLU has sought a preliminary injunction").

Second, that DEA searched "multiple field offices" does not explain delay because DEA did not search *any* field offices until *after* Plaintiffs' filed suit on April 22, 2011. *Compare* Myrick Decl. (Doc. 20-1) at ¶5 (February 1, 2011 search covered Headquarters), *with id.* at ¶6 (April 27, 2011 search included field offices). Further, the need to search field offices posed no barrier to prompt production. Once DEA initiated the search on April 27, 2011, it produced a first set of documents a week later, on May 4, 2011.

Third, the need for consultation also does not explain the delay. As discussed above, DEA did not bother to send out requests for consultation even after Plaintiffs' filed suit, and was prompted to do so only by the preliminary injunction motion. *See* Myrick Decl. (Doc. 20-1), Exh. E. In any event, consultation did not interfere with prompt production: DEA's consultation letters requested a response in four days. *See id.* (May 2, 2011 consultation requesting response by May 6, 2011).

7

CASE NO. C 11-01997 RS
Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs

### c. The number of pages produced after summary judgment does not alter the conclusion that Plaintiffs substantially prevailed

Finally, the size of the November and December 2011 productions is of no consequence. Initially, DEA ignores the fact that these productions were made pursuant to the summary judgment order. The plain language of the statute dictates that where, as here, relief is obtained through "a judicial order," the complainant has substantially prevailed. 5 U.S.C. §552(a)(4)(E)(ii)(I). FOIA does not require any particular "volume." "A court must assess both the substance and quality of the information released….[The] sheer volume of release is not determinative." *Union of Concerned Scientists v. U.S. Nuclear Regulatory Comm'n,* 824 F.2d 1219, 1226 (D.C. Cir. 1987).

Here, in terms of substance and quality, the documents released after summary judgment revealed that DEA publicly stated its commitment to enforcing federal drug laws, but delayed taking action based on information long in its possession against states that had violated those law; in the process, it almost allowed a man in Arizona to be executed with an illegal foreign drug. *See* Pltfs' Mot. (Doc. 58) at 13; Minsker Decl. (Doc. 59) at ¶52, 55, 58-59 & Exhs. 16, 17 at Bates 8-9. "Some would find this information troubling; some may find it shocking." *Katz v. Dep't of Justice*, 498 F.Supp. 177, 185 (S.D.N.Y. 1979) (rejecting government's quantity over quality argument and finding plaintiff substantially prevailed where redacted material showed government conducted surveillance of plaintiff's constitutionally protected conduct).[4] Additionally, this argument ignores the great significance of the documents Plaintiffs' caused to be produced in May 2011. Those documents generated widespread media interest, and prompted DEA to step in at the eleventh hour and instruct Arizona not to use an illegal foreign drug in an execution, where, shortly before the document release, DEA had no intention to take any such enforcement action. *See* Pltfs. Mot. (Doc. 58) at 9-10.

---

[4] *Fesbach v. SEC*, 5 F.Supp.2d 788 (N.D. Cal. 1998), does not avail Defendant. The court there found that plaintiffs did not substantially prevail where "[a]ll of the non-exempt documents were made available to plaintiffs" *before* they filed suit and they simply "chose not to review some of these documents"; the agency's subsequent discovery of additional documents was insufficient to overcome this fatal threshold fact. *Id.* at 790. Here, by contrast, Plaintiffs were never given pre-lawsuit access to the documents produced after they filed suit. Second, the plaintiffs in *Fesbach*, unlike here, offered no explanation of the significance and quality of the documents obtained.

8
**CASE NO. C 11-01997 RS**
**Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs**

**2. Plaintiffs Are Entitled to a Fee Award**

DEA's only contention as to entitlement is that it had a reasonable basis for withholding records. *See* DEA Opp. (Doc. 65) at 11-12. DEA does not dispute that this action significantly benefitted the public by exposing illegal state conduct and lackadaisical federal enforcement of federal drug laws in the context of the death penalty. Nor does it dispute that Plaintiffs are a non-profit civil rights organization with no commercial interest in the issue and a newspaper with a purely journalistic interest. *See* Pltfs' Mot. (Doc. 58) at 16-17. Given the undisputed public benefit arising from this suit, Plaintiffs are entitled to fees regardless of whether DEA's actions were reasonable. *See* S. Rep. No. 93-854, at 171-72 (1974) (quoted in *Deininger & Wingfield, P.A. v. IRS,* 2009 WL 2241569 *6 (E.D. Ark. July 24, 2009) ("[e]ach criterion should be considered independently, so that, for example, newsmen would ordinarily recover fees even where the government's defense had a reasonable basis in law").

In any event, DEA's withholdings were *not* reasonable:
- As to the May 2011 productions, DEA makes no attempt to justify its delay in production or its failure to keep Plaintiffs apprised of the status of their request. *See Conservation Law Fdn.*, 1986 WL 74352 at *2 (awarding fees where lawsuit caused agency to release documents promptly: "Air Force has not, at any time, set forth a legal justification for its inability to produce in a timely manner the records it eventually did release to the plaintiff").
- As to its inadequate search, where, as here, the court held the agency's search procedures unreasonable in the merits litigation, the agency's actions are by definition also unreasonable for purposes of the "entitlement" analysis. *See Aronson v. United States Dept. of Housing & Urb. Dev.,* 866 F.2d 1, 4 (1st Cir. 1989) (withholding of records unreasonable where court had previously held on merits that "HUD's 'expanded search procedures' … were murky and lacking in both definition and merit").[5]
- As to the briefing paper, DEA merely reiterates the same (b)(5) argument that the Court rejected on summary judgment as "conclusory." *See* Order (Doc. 48) at 19.
- As to the identity of the thiopental supplier, the Court on summary judgment held DEA's argument wholly unsupported by any evidence and not credible. *See* Order (Doc. 48) at 17 (agency "cannot credibly" claim that disclosure would impair its

---

[5] DEA contends that it was reasonable not to have undertaken further searches, given the denial of the preliminary injunction motion. But the Order denying that motion merely approved the adequacy of DEA's searches in the compressed time frame leading up to the Arizona execution. *See* Doc. 26 at 5 ("sufficient, *at this stage*") (emphasis added). After the preliminary injunction, Plaintiffs reiterated their concerns regarding the adequacy of DEA's search efforts. *See* Lye Decl. (Doc. 60) at ¶17 & Exh. 1. Yet DEA refused to conduct a further search until the Court found this position unreasonable at summary judgment. *See* Doc. 48 at 24-25.

9
CASE NO. C 11-01997 RS
Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs

ability to obtain requested information in future where it failed to present "any evidence"; lack of evidence also "fatal" to DEA's claim of competitive harm).

- As to the identities of high level officials, DEA apparently concedes the implausibility of its position, now referring to the withholding as "inadvertent[]." *See* DEA Opp. (Doc. 65) at 10.  But the parties vigorously litigated the issue in their summary judgment papers.  *See* DEA Opp to SJ (Doc. 43) at 11:8-9 and 12:14 ("redactions of elected officials, political appointees, or other high-level decision-makers" was "proper").  Facing a losing battle, DEA retreated somewhat at oral argument, and the Court found the agency had made "no showing" to justify the withholding.  Doc. 48 at 21.  By that time, however, Plaintiffs' counsel had already done the work necessary to win the issue.  An "eleventh-hour" concession is no reason to deny Plaintiffs fees for that work.

In short, the Court found DEA to have *no* basis for asserting each of the exemptions on which it lost.  Plaintiffs' entitlement to fees is established.[6]

## B. PLAINTIFFS' ATTORNEYS' FEES ARE REASONABLE
### 1. Plaintiffs' Hourly Rates Are Reasonable

Plaintiffs' moving papers established that their hourly rates are clearly "in line with" the rates charged by attorneys of reasonably comparable experience, expertise, and skill for reasonably comparable federal litigation.  *See Blum v. Stenson,* 465 U.S. 886, 895 fn. 11 (1984).  Counsel's excellent qualifications, expertise, and experience were fully documented (Lye Decl. (Doc. 60) ¶¶24-25; Pearl Decl. (Doc. 61), ¶¶2-5), as were the rates charged by comparably qualified Bay Area attorneys for comparable services (Rubin Decl. (Doc. 62) ¶¶7-10; Pearl Decl. (Doc. 61) ¶¶9-14).  DEA presents *no* countervailing evidence, the absence of which creates the presumption that counsel's rates are reasonable. *See United Steelworkers v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990).

Instead, DEA relies exclusively on the "*Laffey* Matrix," a schedule of rates established 29 years ago for lawyers practicing in the District of Columbia, as adjusted for inflation. In *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 454 (9th Cir. 2010) ("*PLN*"), however, the Ninth Circuit expressly *rejected* use of the "*Laffey* Matrix" to set rates in the Northern District. *See* Pltfs. Mot. (Doc. 58) at 20 n. 7.

Undettered, DEA argues that *PLN* does not prohibit use of the *Laffey* matrix but

---

[6] DEA cites *Klamath Water Users Protective Assn. v. U.S. Dept. of the Interior,* 18 Fed. Appx. 473 (9th Cir. 2001), in which the court found the withholdings not unreasonable where, in ruling on the merits, it expressly acknowledged "the plausibility of the Government's assertion." *Id.* at 476. This Court did not make a similar finding as to the plausibility of DEA's merits arguments, and DEA's citation of this pre-2007 unpublished disposition is improper. *See* Ninth Circuit Local Rule 36-3(c).

10
**CASE NO. C 11-01997 RS**
**Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs**

only permits courts to disregard it. *PLN,* however, goes much farther; it specifically finds that *Laffey* is not a "sound basis" for determining rates in the Northern District: "[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away. It is questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capital." 608 F.3d at 454.

The Ninth Circuit's reasoning governs here: 29 year-old rates in D.C., even adjusted for inflation, have little to do with 2011 market rates in San Francisco. DEA's cases do not negate *PLN's* reasoning or force. Its two primary cases preceded *PLN*.[7] DEA's other cases involved fee claimants who based their rates on *Laffey* without opposition; even then, some courts were reluctant to accept it. *See, e.g., Ulin v. ALAEA, Inc.,* 2011 WL 4974282 at *2-3 (N.D. Cal. Oct. 9, 2011) (accepting *Laffey* rates claimed by plaintiffs because unopposed by defendant, but noting that "[t]his Court does not necessarily endorse the use of the *Laffey* matrix as an appropriate measure of reasonable fees in this district…"). Other courts, following *PLN,* have expressly rejected *Laffey*. *See, e.g., Daley v. A & S Collection Associates,* 2010 WL 5137834 *3 (D. Or. Dec. 10, 2010).

**2. Time Spent on the Preliminary Injunction Motion Is Compensable**

Plaintiffs' moving papers also showed that the time spent pursuing a preliminary injunction was reasonable and therefore compensable because: a) DEA had not committed to a date for completing its document production and Arizona's proposed execution date was looming; b) the motion did spur the DEA to speed up its process and to produce documents; and c) the initial document production was inadequate because it failed to include the Form 236s, as subsequent disclosures showed. *See supra* at II-A-1-b. This work easily meets the Ninth Circuit's standard for the compensability of such work: "[A] judge properly looks at whether what the lawyer did was reasonable when he did it, and compensates for time reasonably spent. [Time is compensable where] work was what one

---

[7] *Craigslist, Inc. v. Naturemarket*, 694 F.Supp.2d 1039 (N.D. Cal. 2010), was decided on January 28, 2010, five months *before* PLN was decided. *Theme Promotions, Inc. v. News America Marketing FSI, Inc.,* 731 F.Supp.2d 937 (N.D. Cal. 2010), was decided on June 14, 2010, only five days after *PLN* was decided: given that the district court did not cite or attempt to distinguish *PLN*, it obviously was not aware of the decision.

11
**CASE NO. C 11-01997 RS**
**Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs**

would expect of a lawyer working for a client that could afford its efforts but that was not indifferent to the cost." *Balla v. Idaho*, 677 F.3d 910, 921 (9th Cir. 2012) (time spent on losing motion compensable). Indeed, as Plaintiffs showed, *Balla* is very closely on point.

In *Balla*, the state had said it would comply with the court's prison conditions injunction by March 1, but after the plaintiffs filed a contempt motion, the state complied with the injunction a month sooner and the court denied the contempt motion as moot. In affirming the district court's award of fees for the losing motion, the Ninth Circuit recognized that "such losing motions…are a common and effective tool for bringing about conformity to the law. Such motions might be seen as the opposite of a Pyrrhic victory. Despite losing the battle over the contempt motion, the prisoners nevertheless won the war by inducing the State's prompt return to compliance with the injunction…. The object of the motion was to obtain compliance, not to win an order hopefully leading to compliance. The object was attained." 677 F.3d at 920. *See also Assembly of the State of Calif. v. Dep't of Commerce*, 1993 WL 188328 at *8 (E.D.Cal. May 28, 1993) (FOIA case: "in a practical sense the motion served to advance plaintiffs' goal of quick resolution.").

*Balla*'s reasoning squarely fits the instant case. DEA cannot distinguish it, or *California Assembly,* so it ignores them, instead arguing that the motion was "unnecessary" and produced "no substantial benefit," citing *Exner v. FBI*. DEA Opp. (Doc. 65) at 15. As previously shown, however, Plaintiffs' motion *was* necessary: the DEA had made no firm commitment to produce documents and the imminence of the Arizona execution gave Plaintiffs a concrete reason, like the plaintiff in *Exner,* to seek records "as soon as possible." *See* 443 F.Supp. at 1353; *supra* at II-A-1-a*.* Likewise, the motion *did* produce significant material benefits: as DEA itself admitted, the motion caused it to take action to produce documents that might not otherwise have been timely produced. "This matter is urgent … *as the ACLU has sought a preliminary injunction for records against the DEA.* As such, we are asking that your response be provided to this office no later than May 06, 2011." Myrick Decl. (Doc. 20-2), Exh. E (emphasis added). And the documents produced finally prompted DEA, the day before an execution, to stop Arizona from executing a man with an illegal foreign drug, even though prior to disclosure

12
CASE NO. C 11-01997 RS
Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs

DEA did not intend to do anything; all of this generated national media attention. *See supra* at II-A-1-c. As *Balla* and *California Assembly* make clear, denial of a motion is no reason to deny fees where, as here, the motion was reasonably undertaken and productive.

### 3. Reduction for "Limited Success" Is Neither Required Nor Appropriate

DEA's third argument – that because Plaintiffs did not win every issue on summary judgment and allegedly received only "minimal" information, they should only be compensated for half of that work – is both legally and factually flawed. DEA does not dispute that all of Plaintiffs' claims here were "related," nor does it contend that counsel's efforts were unreasonable or that they achieved only *de minimis* results. In these circumstances, there is a "strong presumption" that Plaintiffs' lodestar is reasonable and that counsel should be compensated for *all* of their reasonable work; reductions for "limited success" should be imposed "[o]nly in rare instances." *Morales v. City of San Rafael,* 96 F.3d 359, 364 n.8 (9th Cir. 1996). *See also* Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation,* p. 30 (1994) (partial success reductions generally applied only in "extreme circumstances").[8]

And the significance of the documents was hardly "minimal." Documents produced pursuant to court order revealed that DEA, while pronouncing its tough stance on drug enforcement, sat on information in its possession that states had violated federal drug law, almost allowing a man in Arizona to be executed with an illegal foreign drug. *See supra* II-A-1-c & Pltfs' Mot. (Doc. 58) at 13. This information was critical to the ongoing public debate over the death penalty. *See California First Amendment Coal. v. Woodford,* 299 F.3d 868, 876 (9th Cir. 2002) ("An informed public debate is critical in determining whether execution by lethal injection comports with the evolving standards of decency which mark the progress of a maturing society."). "Success is measured not only by the amount of the recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Morales,* 96 F.3d at 365. Given the import of the issues, Plaintiffs' victory was well worth the effort.

---

[8] The conclusory reference in *Hersh & Hersh v. U.S. Dept. of Health & Human Servs.,* 2008 WL 2725497 (N.D. Cal. July 10, 2008), cited by DEA, is pure *dicta* on this point; the court had already denied all fees on eligibility and entitlement grounds.

13
CASE NO. C 11-01997 RS
Plaintiffs' Reply ISO Motion For Reasonable Attorneys' Fees And Litigation Costs

### 4. The DEA's Other Objections Lack Merit

The DEA's two other objections also lack merit. The argument that the Form 236's were not part of this lawsuit is wholly implausible. *See supra* note 3 and related text.

The notion that counsel should not be compensated for reviewing documents produced makes no sense: how else could counsel decide whether the documents produced were in compliance with their request? Well-established fee-shifting jurisprudence recognizes that monitoring and ensuring compliance with a judgment is as important – and compensable – as obtaining the judgment in the first place. *See, e.g., Keith v. Volpe,* 833 F.2d 850 (9th Cir. 1987). Reviewing the documents produced to see what they are and whether they comply with FOIA is no different than monitoring and enforcing any other judgment. *See, e.g., PLN,* 608 F.3d at 453. In addition, reviewing the produced documents is inextricably intertwined with the undisputedly compensable activity of litigating the propriety of exemptions and adequacy of search efforts, litigation that would be impossible without knowing the content of the documents produced. *See, e.g., Gracie v. Gracie,* 217 F.3d 1060, 1070 (9th Cir. 2000) (apportionment not required where claims are "inextricably intertwined"). *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 825 F.Supp.2d 226, 231 (D.D.C. 2011), the one district court case that applies this ultra-narrow reading of the statute, conflicts directly with these established principles, as well as common sense, and should not be followed. No reasonable client who had hired counsel to pursue this litigation would or could justifiably refuse to pay for such work. *See Balla,* 677 F.3d at 921.

### 5. Plaintiffs' Work on this Motion Is Fully Compensable

DEA next claims that Plaintiffs should be denied all compensation for all their work on this motion because their request allegedly is "grossly inflated." But the overarching rule is that all time reasonably spent on a fee motion is compensable. *See Anderson v. Director,* 91 F.3d 1322, 1325 (9th Cir. 1996). If time is unreasonably spent, the correct procedure is to reduce the award, not to deny fees altogether. *Id.*

Alternatively, it claims that compensation for fee work should be reduced in proportion to any reduction in Plaintiffs' merits fees. However, even if Plaintiffs' *merits*

fees are reduced – a proposition Plaintiffs dispute – a proportionate reduction in "fees-on-fees" is neither required nor appropriate. Many fee-shifting cases fully compensate reasonable fee motion work, even if some merits fees are cut. In *Bernardi v. Yeutter,* 951 F.2d 971, 976 (9th Cir. 1991), for example, the district court denied all fees on fees because it found the request excessive. The Ninth Circuit reversed, directing the court to award *all* the requested fees, even though the merits fees had been reduced by half. *Id.*

Factually, DEA presents *no* evidence that the time spent on this fee motion was unreasonable, let alone "grossly inflated." DEA has contested every element of Plaintiffs' fee claim, from "prevailing party" to the $386.61 in costs claimed. Prior to filing this fee motion, Plaintiffs attempted to persuade DEA that these arguments were untenable, to no effect; they then addressed those arguments in depth in their moving papers, and now again in reply. Lye Reply Decl., ¶ 2. The resulting hours are reasonable; indeed, they are significantly less than those found reasonable in both *Bernardi* ($74,427.47) and *PLN* ($88,940.29). *See* also Pearl Reply Decl. at ¶3.

### 6. Plaintiffs' Costs Are Modest and Compensable

FOIA provides that the prevailing party may recover its "litigation costs reasonably incurred." 5 U.S.C. §552(a)(4)(E)(i). Accordingly, Plaintiffs requested a grand total of $386.61 in fully documented costs and expenses. In response, DEA does not dispute that Plaintiffs' costs are reasonable but cites *five cases* for the proposition that costs can be denied in some circumstances. The cost of responding in any depth to that argument would exceed the amount at stake: The simple fact is that DEA has given no compelling reason for disregarding FOIA's plain directive that the prevailing party is entitled to recover its "litigation costs reasonably incurred."

### III. CONCLUSION

Including time spent responding to DEA's opposition (Lye Reply Decl., ¶ 3; Pearl Reply Decl., ¶ 2), Plaintiffs' total fee request is $177,618. DEA has presented no viable reason why that amount should not be awarded in full. For all the foregoing reasons, therefore, Plaintiffs respectfully request that they be awarded reasonable attorneys' fees and litigation expenses in the amount of $178,004.61.

Dated: June 28, 2012            Respectfully submitted,

By: _____/s/_____
         Richard M. Pearl

Richard M. Pearl
LAW OFFICES OF RICHARD M. PEARL

Michael T. Risher
Linda Lye
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

Attorneys for Plaintiffs